The first case for today is 2017-11212 United States of America v. Jeffrey Ndingi Sila. If I pronounced that incorrectly, you feel free to correct me. I will not have an answer for that, your honor. Good morning. My name, I may it please the court, my name is Nancy Barron. I represent Mr. Jeffrey Sila. Mr. Sila challenges his conviction of count one and seeks a reversal of count one based on the trial court's refusal to instruct the jury on unanimity of theory. This case may present some sort of novel facts, but this was a 641 theft of government property count. The events which occurred in Dallas, Texas were straightforward. It was pretty Mr. Sila arrived in Dallas in early August, engaged in negotiations with Lydia Brough and also through some apparently phone text messages from his brother Edwin Sila in an effort to sell a fraudulent treasury check to an undercover agent. Where the problem becomes naughty is through the jury arguments, it seems to me, and in the jury instructions. And Mr. Sila's trial lawyers made the issue of where did this theft occur? Did it occur in Kenya when the return was filed? Did it occur when he possessed the check or if he possessed the check in Kenya or was the government saying that the theft occurred in Dallas when he sold the check? And I would say yes. Other than the points in the closing argument a couple of times where there's some vagueness added and the fact that the agent wasn't clear on what he believed to be where the theft occurred. Is there anything else in the way this case was tried that makes it that it didn't happen in Dallas? Well, I guess the best way I can sort of analogize this is this. You know, a person, you know, the government can constructively amend an indictment through jury argument. But I don't see this as a constructive amendment argument. But what they did do is invite the jury to expand the universe of facts that it can consider in determining whether Mr. Sila violated 641 as alleged. And so it was alleged that he stole the check. And at the jury charge conference, defense counsel made much of saying, well, you should give the unanimity of theory because stole and convert are different theories. And certainly at the time, through the jury argument, the government argued that the check was stolen and possessed with the intent in Africa, which it stressed three times that Mr. Sila brought to the United States. So why make this argument? I mean, it seems to me this is an unnecessary argument to make unless the government perceived that it would derive a I perceive these as arguments that were important to the government. And that's why they made them and made them more than once. And so what was the benefit to be obtained from this? You know, I guess I'm thinking that it has something to do with count three down the road. But in any event, this problem, you know, this expansion of facts, which the jury, to consider, I think was made more problematic through the jury instructions. And the instructions describe the offense of count one and count three in a single instruction. And so as count one and count three, the jury was to find the same facts as defined in the charge. And so the jury sent out a note. It expressed that it was confused. The government admitted that it thought the government was confused. The government was confused because they don't know what we're talking about. And the court also acknowledged, maybe we should give them some sort of clarification about what the government's talking about. And so, you know, it seems to me that the issues of potential jury confusion so that we all know that you had a unanimous jury on the same set of facts, in this case, that may not be a problem in most cases. But in this case, while there was ample evidence that the check was sold in Dallas, there was no evidence that Mr. It's an unusual case. It may be a novel case. I know it's very fact specific, but nevertheless, the unanimity of theory instruction is there for a reason. And the reason is to ensure that all 12 jurors agreed on the same set of facts and that these facts constitute a crime. And under these particular facts, it's our position. That's just not the case. That it was error. It wasn't a decent discussion. Council, remind us other than objecting to the not giving of the unanimity theory of the instruction, was there also objection made to the way that the charge was constituted? Can you refresh our recollection? I do not believe there was an objection to the way it was constituted and I would be happier if there had been. But, you know, that was the charge that was given. I do think the charge was confusing for the same reasons it is in count three than it is in count one. The conduct, and I'm going to move along to count three. While you're moving on to count three, could you help us understand what do you think they would need to show to link the IP address to Jeffrey Zilla? The IP address on count three? Yes. Well, I think they could definitely link the IP address to him through his PayPal records. But I don't think they could put him at that location on that particular day because it was he as opposed to someone else who actually filed the return. That's my question. What, you know, what more would you want that you would then not have raised this point on appeal? What more, what evidence, what are we looking for? What's that crossover, the finish line that you think is missing here? I think it would be two things, Your Honor. I think, number one, if you could show that he, you know, I mean, we know very little about how this business, what the business was in the mall in Nairobi, but if they could show that he had accessed his PayPal record from that IP address on that very day, I think that would show that he was, you know, on the day that the return was filed, that that would be more substantial evidence. I think in addition to that, there needed to be some evidence that he was a knowing participant, that he in some manner was working in concert with his brother Edwin and Lydia Brough four years before he arrived in Dallas. And there's just nothing there. There's just no evidence of that. And so it seems to me that what the government did, and I think it's sort of a tacit recognition that the proof was inadequate, was to go on sort of a modus operandi theory. They did, you know, they're acting in concert. You know, they did this before. You see Lydia Brough and Edwin and Jeffrey were all involved in the 2016 check. Therefore, they must have also been involved in the 2012 event because they're similar crimes. Well, you know, they're similar in a broad sense, but not similar in a modus operandi sense. And, you know, for all we know, Jeffrey was no more than a one-time courier on the 2016 check. And so I think it's important to consider, and I don't know how the court would want to consider this, but in arguing this to the jury, the government argues, I submit to you that Enterprise ICT is Edwin's business. And from there, he ran, he filed the tax return. The tax returns were filed from there. And this went on from, you know, for a number of years. And they're all part of this criminal enterprise. So this was not in the evidence. And trial counsel objected that it was not in the evidence. The court denied that objection. And so I asked myself, where does this argument come from? You know, why would you make this argument? And it looks to me, when you read the sentencing hearing, that the argument comes subsequent. It's based upon the arrest of Lydia Brough. And it's sentencing what the government states is, Lydia Brough stated that Edwin Silla filed the returns, that she and he had been acting together beginning in 2010 through 2016, that Edwin filed the returns and he had the identities. You know, I think that's a concern. You know, it's a concern when you look at what I perceive to be woefully insufficient evidence of his participation, knowingly aiding and abetting conduct in 2012. I mean, they've had communications with each other in regard to that transaction. If they shared the money, you know, if there was some link to the bank account, that would be something else. But we don't have that. And so with these arguments of strikingly similar similarity, I just don't think are enough to move that ball down the road to a place of sufficiency. And that's how I see the Mr. Silla represented himself at sentencing. He did an admirable job. And this is just something I want to bring up, and it just came to my notice. But it seems to me that he was sentenced. You know, his criminal conduct was he arrived in Dallas and sold a $76,000 check to an undercover agent. He was sentenced for $4 million in losses, to which he was only a tenuously attached. And as to the returns that were filed, put on his ticket under the 169 IP address, the probation officer represented in the court that he used that IP address to log into his account. He noted it, not a single time. And I know the government doesn't disagree with that. You know, there was no evidence in the PayPal records that he received money separately from this Richard Reeves or had a deposit of regularity. Those facts just are not in this record. And yet the court adopted that and sentenced him to a substantial sentence on that basis. And so on, you know, I ask that, what I ask generally, and just to sort of conclude my rebuttal, that count one be reversed for instructional error, since the 1028 count requires proof that the 641 count is a predicate, that that be also reversed, and that count three be vacated for insufficient evidence. Failing all that, we ask that Mr. Silla's case be remanded to trial court for new sentences. I'll just say the rest of my rebuttal. Counsel, in the reply brief, you state that Silla's PayPal records do not reflect monthly $5,000 transfers into his accounts. But at page 1978 of the record, the PayPal records show the amount received in three separate months of $9,000, $10,000, and $5,000. Can you help with that argument that you're making with regard vis-a-vis the evidence? Well, he certainly did receive money into the accounts. Where that money came from, I don't know. But what the government's witness from PayPal, the custodian, said that all bank accounts used through PayPal are documented in the PayPal records. And so the pre-sentence report says that these checks were linked to a specific bank. And that bank does not appear in Mr. Silla's PayPal records. So I think that there's a missing link in there, in terms of, can you say that these are payments from Mr. Reeves or from his bank account, as opposed to something else? I'm sorry. It's hard with this Zoom. The JPMorgan Chase account is the one that the payments need to have come from, in order to link him up. And that's not what's in the PayPal. Is that your argument? That's my argument. Okay. Counsel, also, you had noted that you tried to put your flash drive into the record, on the record excerpts, and you had a difficulty with that. And we, of course, apologize that you had a difficulty with that. We're working on being able to do electronic transfers between the district and the courts of appeals. And that's, hopefully, it may be the beginning of the year before we have that ironed out. But we recognize that that's an issue. But in the future, you can always, and Mr. Gilstrap, you may have electronic documents as well, you can always say the number in the district court, and then we can request it. And on rebuttal, counsel, if you could please tell us what is in that flash drive that you think helps make out your case that we need to look at. Okay? If I could, could I briefly respond now, and then I might not have to address it? Or I don't want to eat until it's time. I'll do it later. Well, I just think you saved time, and I tried not to talk until you were done with your time. So you can address it briefly. Okay, thank you. Mr. Gilstrap. Thank you, Judge Elrod. It may have pleased the court, Stephen Gilstrap, on behalf of the United States. This court should affirm Mr. Silla's conviction and affirm his 97-month sentence, especially considering the deferential standards of review that apply to the issues raised on appeal, and given the overwhelming evidence of Mr. Silla's guilt presented at trial. Unless the court prefers, I'll start with the jury charge argument on count one, then move to the sufficiency challenge, and then the intended loss calculation like opposing counsel did. Counsel, was there some reason that the closing argument included a reference that he had stolen the check and had it in Africa? Is there some reason that that was included in the closing argument? Because I believe it stated that that is not the theory of the case. That's correct, Your Honor. That's not the government's theory of the case, and I think the trial record bears that out. My understanding is, in closing argument, the government was attempting to put everything in context. There was a reference that this may have been because of count three. I think any reference to Mr. Silla receiving the check at some point in time in Africa, I mean, it's not clear from the record. We know that the check was mailed to Kenya in February of 2016, and we know that Mr. Silla came to the United States in May of 2016. We don't know when he received that check. I think the speculation, and I believe the was over in Kenya before he came to the United States, but as opposing counsel says on page 23 of their brief, there was no evidence about who filed the Cynthia Short tax return. There was no evidence about how, where, when, or exactly how he came into possession of that check. The government's theory of the case, and this is borne out in the trial record as well as the Cynthia Short fraudulent IRS check in Dallas, Texas on August 9th, 2016. And just to highlight a couple points on that, the indictment, the second superseding indictment clearly alleges that the act took place on August 9th, 2016. That's the day he sold the check. We know that's not the day he came into possession of the check, and we know that's not the day that the fraudulent tax return was filed. We also know from the indictment that the act took place in the Dallas division of the Northern District of Texas. We, the only one of those three acts that we know took place in Dallas was the selling of the fraudulent IRS check on August 9th. So I think the indictment makes it very clear what the government's case was. And I think if you look at the trial record, it is very clear that as to count one, the government is laser focused on the selling of the check as the basis. We heard from the undercover IRS agent. He was the person that testified the trial. There were complete audio and video clips of the actual transaction of the $48,000 changing hands between Mr. Silla and the undercover IRS agent with Lydia bro right there in the passenger seat or the backseat. Um, and, and on the closing argument point, I think any sort of reference to, he may have come into possession of this in Africa was really to paint a picture of the overall context of how this overall scheme worked. I mean, there was no dispute that the scheme emanated from Africa and involved, you know, multiple fraudulent checks, refunds being sent, um, on behalf of, you know, deceased Americans to people in Africa, whether that was through a refund check being mailed to Africa or fraudulent refunds being It's showing an overall pattern. And I think any reference in closing argument to this pattern, the government makes it clear that they're trying to paint the overall context and the overall pattern. And if we look at a couple specific points in closing argument, and I direct the, the court to pages 1239 and 1240 of the record on appeal, the government says repeatedly the $76,000 check. We heard from the undercover agent. We heard about the transfer that's count one. And then on the next page, the government says that transaction specifically is all we're talking about when we're talking about count one. So I believe the, the government, even though it, you know, reference that he probably came into possession of this check, um, at some point when he was over in Africa made clear, exactly. This is what count one is focused on any reference to him coming into possession of the check in Africa really was to show an overall pattern and show a relationship between count one and count three. But I don't believe the trial record bears out that it was a separate theory on which the government, um, proceeded at trial. Counsel, I have, um, more difficulty with the, with the IP address and the difficulties associated with that. Of course, that's part of this record. Uh, you really don't talk that you can't, you cannot make connections on the evidence you have, um, that IP address, um, records quite clear, um, was used extensively. Um, but you can't really tell on that connect, you know, three, that's a difficulty I have with that. Sure. I have more trouble with that than I did with the other earlier arguments. Of course, Judge Higginbotham and I, I'm prepared to move on to count three and I'll get there right now. Thank you for that. Um, so on the sufficiency argument, um, I think it's helpful to, to kind of give a brief overview of the record and say exactly what we do know about the IP address and about the Diedrich EPR fraudulent return that was filed for that address. So the record shows that on March 22nd and March 25th, I believe in 2012, two fraudulent tax returns were filed from what I'll call the four one IP address. Um, that's the IP address involving count three. One was in the name of Diedrich EPR and that's the basis of count three. The other was in the name of Clyde Dulaney. They both had the same exact refund amount and the refunds both went into Lydia Brough's bank account that was in, I believe Grand Prairie, Texas. Um, so they were filed within a few days of each other from the same IP address, that four one IP address. And the refunds were sent to Lydia Brough. And then about $9,000 out of one of those refunds was wired to Mr. Seidel's brother, Edwin, who, you know, like Lydia Brough was involved in count one as well. What do we know about the IP address? Well, we know that Mr. Seidel logged into the four one IP address more than 900 times and used it, that IP address to log into his PayPal account more than 900 times over the span of a few years. So he's using this, um, IP address very, very regularly. I mean, 900 logins over the span of a few years is a large amount. And we know- He was the sole user. You've got other, other users there and you also don't have the connection with a, with a, with a corporate entity either that has the IP address. It's in the name of the corporate entity. Correct, your honor. And a few points on that. I do believe, and this is contrary to opposing counsel's arguments, that there is strong circumstantial evidence in the IP address was not a public network. It was not an internet cafe that anyone could log into willy-nilly. I believe what the record shows- You have a number of players in this, and you've got, you've got this defendant and his brother, Edwin, and you've got other players that they're not necessarily, you know, you can argue modus operandi or whatever, but when it comes down to this particular account, you've got the most, you don't close the gap under this evidence. Well, I think a couple pieces that help, a couple pieces of evidence that helped close that gap, Judge Higginbotham. One of the electronic exhibits that Judge Elrod referenced earlier that the court can obviously request if it would like is government exhibit 38. What that exhibit shows are logins into Mr. Sila's PayPal account within a couple days of when these fraudulent tax returns were filed. I know Ms. Barron suggested that you would need something on the actual day. I don't believe that's the standard, and I think when you have multiple logins to this 401 IP address into Mr. Sila's PayPal account within a couple days of when the, you know, EPR and the tax returns were filed in March, 2012, I think that's strong circumstantial evidence to link him. And the other point I'll make, again, about the public nature of this network, and we don't believe that it was, we believe like any other network it was password protected, is there was evidence at trial from the IRS computer specialist, Ms. Lagos, who said this is associated with a specific business. Most businesses password protect their IP addresses, so you don't have bottlenecks and people logging on all the time and slowing things down. If it was public, what we would expect to see is a slate of IP addresses, 5, 10, to where you go to this place, you can log in, and instead of having 50 people on one IP address, you have five people on this address, five people on this address to kind of space out the bandwidth and the load. If you look at Mr. Sila's PayPal account records and government exhibit 36, that's associated with one PayPal account, and government exhibit 40, that's associated with the other. For the 401 IP address, you see a huge spike in the number of logins from that IP address, you know, 780 some odd for one and 150 for the other. The other IP addresses that are shown show a couple logins here, half a dozen logins there, you know, maybe 20 here. If this were a different IP addresses, and the evidence at trial was that if that was the case, then you would randomly get assigned one of these IP addresses when you went to the business or the internet cafe or whatever it was, and so you would expect to see a distribution. We have evidence that the defendant had access to that program, overwhelming evidence of that, but what is the evidence that he and the other players, and they seem to have the $9,000 checks versus the $74,000 checks there, they were different, somewhat different lines with each other. Right, and there was evidence that there were other players. I do not believe there is any evidence in the trial record showing that anyone other than Mr. Sila could log in to this IP address. There was a, you know, an argument from defense counsel that anyone could do it, but I After he was arrested, someone logged in. I misunderstand that. So, there are a couple of logins into this, into his PayPal account. That's into the PayPal account, not the IP address. There are no logins into his PayPal account from the 4-1 IP address after he was arrested. There were a couple logins into his PayPal account from different IP addresses after he was arrested, and there's no evidence about why that is, whether he gave someone his permission to log into his PayPal account, but none of the logins to his PayPal account after he was arrested were from the 4-1 IP address. So, you're saying there's no evidence that anyone else had, including his brother, because that's the question I have. I don't really buy this somebody random in the public used it argument, but Edwin clearly is involved in this overall conspiracy as well, and very well could have been the one that did this, in which case, just because Jeffrey's his brother doesn't make him liable or criminally liable. So, how do we know Edwin did not have access to this IP account? I think, to me, that's the bottom line question that bothers me. Well, there's no evidence in the record, I believe, that shows that Edwin did have access to this IP address, in addition to the PayPal accounts, which we talked about pretty extensively. The other thing I would point out is the PO box, the specific PO box 51668 in Nairobi, Kenya, that was the address for Enterprise ICT, the business that the IP address was registered to, was the same address that Jeffrey Sila listed as his home address on one of his PayPal accounts. That's Government Exhibit 40. Again, that's the PayPal records. So, he's listing this as his home address, in addition to all the other logins and everything else that we put that with, you know, the evidence connecting his involvement with Count One. You kind of put the PayPal account information, the IP address information, the number of logins, the PO box that links him directly as his home address to this business, and, you know, the similarities between Count One and Count Three of fraudulent tax returns being filed from Kenya on behalf of you get enough when you put that all together to get you over the sufficiency hump, especially given, you know, these are jury's factual findings, the deference that's owed. I don't believe that on this record, given all of that evidence, especially when it's combined, that it's possible to say that no rational jury could have found Mr. Sila guilty, especially given the aiding and the aiding and the abetting of Mr. Sila. So, what is your point that it couldn't have been Edwin? Because the transaction was definitely between Lydia and Edwin in 2012. That we know that even, I mean, we may not have known that before completely, but we know that based upon Lydia's comments and things that Edwin was involved. And then we know that the business itself is Edwin's business. And so you're saying he didn't have access to his own IP address for his own business? That's not very logical to me. He very well may have access, Judge Elroda. What I was saying is I don't believe there's anything in the record that confirms specifically that he had access. The connection between Lydia Breaux and Edwin Sila on Count Three is that part of those two refunds from the IPA return and the Dulaney return, part of that went back to Edwin Sila. That I don't believe has anything to do with the IP address other than to show that he got some amount of the refund sent back to Africa. So that's what I meant, and I apologize if I misspoke. The reference to this being Edwin's business, that was the government's suggestion in closing. I don't believe that there was any hard evidence that came out at trial to say this is Edwin's business or this is, you know, red shirt. I think you have to go with what your people are arguing. I mean, they're arguing that Edwin's involved in this, and so I don't really, it seems more likely that it's Edwin than it's Jeffrey for the Count Three. I think that it's certainly, given the span of this tax scheme, it's certainly possible that Edwin was involved, but I don't think, you know, the jury heard all the evidence here, all the evidence about Jeffrey's PayPal accounts, his, you know, the PO Box address that was listed in his accounts, his involvement in Count One as well, and determined after reviewing all that evidence that he was guilty. So I think it comes down to a factual question that given all the evidence that is there linking Jeffrey to this IP address and to the PO Box and to everything else, I think there's enough there, not necessarily to the exclusion that Edwin was involved in some way, shape, or form, but I don't think Edwin's involvement, you know, puts Jeffrey off the hook in any way, shape, or form here. Now, so what do you do with our, we have some pretty strong cases and holding the government to its proof that these IP addresses, et cetera, are in multiple, in particular, limiting modus operandi, where you have multiple, you know, bank robbery series, five or six guys are holding up banks and so forth, but then you have the question of linking to one particular bank and, of course, there could have been any one of the others at the time, et cetera, et cetera. So the case law doesn't really support the inferences and the linkage you want to draw from it. There is sort of a common sense thing, these guys were really all in this together and et cetera, et cetera. But what my larger concern is in this type of cases is this type of, in the digital world we to usage of an IP address where there are multiple users has to be really, you have to be very careful with. And that's my concern, the largest concern with whether you're able to close the gap here as to that count. I appreciate that, Judge Higginbotham, and I appreciate the point and the question. I think you're likely referencing the Guerrero case that's cited in the defense counsel's reply brief. I think this case is different because really all you had there was the modus operandi evidence. Here we have the PayPal account records, the PO box, the IP address was password protected likely and everything else. And I think that separates it from a case where we're talking only about modus operandi. I think we have more in addition to that respectfully. And if I may briefly with my last minute, I'll turn to the intended loss calculation just to address a couple things that were said. First is about the bank accounts being listed in the PayPal records that Ms. Barron brought up. The evidence at trial was clear, and this is ROA 1051-1053, that's the testimony of Mr. Harmon from PayPal. The bank accounts that are shown in the PayPal records were Mr. Sila's bank accounts. In order to link a bank account in PayPal, you have to prove that you were the PayPal account owner as well as the bank account owner. You can't show as a linked bank account something that's someone else's bank account. And I think government exhibit, I believe 40 makes this clear because as Judge Elrod said, it's clear that there's money flowing into that account from the first page of that record. But at the same time, no bank accounts are listed as being linked. And I see my time has expired. Thank you for your time and for all the reasons in those in the government's brief, we respectfully ask that this court affirm the judgment and sentence. Counsel, I'm sorry, I have two questions. If we were to find that count three, there was not sufficient evidence, just assume arguendo were not sentencing. Likely so, likely so, because there is a restitution issue with count three. That's not in count one, you know, is your honor. I think the base of the question is Mr. Silla was sentenced concurrently on count one and count three to 73 months. So my strong guess is that the overall sentence wouldn't change. And given that there's no challenge to the intended loss amount blowing from the 401 IP address on appeal, I don't believe it would upset the intended loss calculation at all either. But likely given that there's not complete identity given the restitution, I do believe that a remand would be appropriate. Okay. And then can you answer why if the JP Morgan account is not in related to the PayPal records? Sure. That's the point I was trying to make here at the end. Of course, the bank accounts that are listed on government exhibit 36 and government exhibit 40, those are the bank accounts that were quote unquote linked to Mr. Silla's PayPal account. The testimony at trial was in order to link a bank account for the purposes of those records, the PayPal account owner has to be the owner of the bank account. And there's a discussion about ways that PayPal can ensure that you're the owner of the PayPal account and the owner of the bank account, because for obvious reasons, you don't want someone who does not own the bank account to be able to link those accounts and draw money out of them or anything like that. That doesn't foreclose or preclude in any way, shape or form that I have a bank account at JP Morgan Chase. I want to send somebody some money in a PayPal account. I can do that without our accounts being linked. The linked bank accounts that are shown in the records belong to Mr. Silla and the PayPal corporate representative who testified at trial talked about the ways that PayPal confirms identity between the account holder for the PayPal account and the bank account. So Forrest Reeves bank accounts would not show up in the PayPal records for that reason. Okay. Thank you. We have your button. Well, we can't hear you. Push the button wrong. Is this right? Yes, we can hear you now. Okay. Thank you. I don't have a specific response to Mr. Gilstrap's argument on the PayPal records. That's not how I read that. I could be wrong on that. But there's certainly no reference to Mr. Reeves. And there's certainly no regular $5,000 payments on a monthly basis in this record. Anywhere. And so if they exist out in the universe, they don't exist in this record. I would say just the obvious, you know, and I think defense counsel made this point clearly a trial. More than one person can be on the same internet address. Everyone and his brother could both be using that same IP address at the same time. If my son comes over, we can both be on my time access at the same time. That doesn't make you the filer. And then just I think that, you know, we pretty much exhausted this. But on the issue of the exhibits, I had a lot of trouble with that. I did get a copy of that flash drive. It was very difficult and I had to send it out to have it professionally copied. Some of the spreadsheets were just so enormous, they just wouldn't fit on I've offered them to the government in the past. They told me they wouldn't bait stamp an Excel spreadsheet. So that's where I had to leave it. But, you know, they're a little more complex than I think are represented here. But I'm certainly happy to send my copies to the court if it would be useful. What is the evidence in the, we can get the drive that's in the record. So what is, but I'm asking, what do you want us to be looking for in the drive? What show proves your case? When I look at these records, what, what approved some point in your case? Well, one is that he was sentenced on the basis of all loss flowing from the 196 IP address, which was the IP address from which the short count one return was filed. And the basis for that sentence was that he had used this IP address to log into his PayPal accounts. He never used that IP address to log into his PayPal accounts, not a single time. And so that's an incorrect factual basis to, to, as for, for determining loss. That's my argument is that the court relied on facts that were not true. And unsupported by the record. So that's what we're trying to figure out is what piece of paper would you hand us that we don't have? I don't know what, I have two things. And these, you know, Mr. Gilstrap's probably better at this than I am. They have a summary of the logins, all, all the login IP addresses used for the life of the account by date. And so as to both the hot account, every single login IP address is listed. And, you know, they're tedious to go through. But if you go through all of them, the 196 IP address is never listed as, as, as a login address. And I don't think the government disagrees with that. And so, so that's the problem. And, you know, those two summary documents are the easiest way to check that out. Okay. Thank you, counsel. Do you have anything else? I do not. And thank you for hearing this case and we look forward to your result and we appreciate your time. Thank you. Thank you very much. We appreciate your argument today and this case is submitted. Thank you. Thank you.